IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CR-16-123-R |
|  | ) |  |
|  | ) |  |
| DEBORAH A. GRAY, and | ) |  |
| KEITH B. GRAY, II, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## ORDER

This a criminal forfeiture matter stemming from Defendant Deborah Gray's pleading guilty to healthcare fraud. The United States ("the Government") now seeks a final order of forfeiture of the house she holds in joint tenancy with her husband, Keith Gray. Arguing that the Government has inappropriately forfeited his interest in the residence and a shared bank account, Mr. Gray asks the Court to set a hearing to adjudicate his rights in the property. Doc. 56. In response, the Government moves to dismiss his Petition, Doc. 61, and requests that the Court enter an order for an interlocutory sale of the property. Doc. 62.

Because Mr. Gray alleges that he paid value for the house without knowledge of his wife's crimes, the Court GRANTS his motion for a hearing. Doc. 56. The Government's Motion to Dismiss is therefore DENIED. Doc. 61. The Government's motion for an interlocutory sale is also DENIED. Doc. 62.

1

## I. Background

Petitioner Keith Gray and his wife, Defendant Deborah Gray, purchased a home together ("the Gray marital residence") in Oklahoma City in March 2013. Doc. 56, Ex. 1. At that time, Mr. Gray was allegedly unaware that his wife and son had been perpetrating healthcare fraud upon the federal government since October 2011. Indeed, according to Mr. Gray he remained oblivious to these crimes until July 6, 2016, when a federal grand jury sitting in the Western District of Oklahoma returned a 151-count indictment against his wife and their son. The indictment described in detail how from October 2011 through May 2014 the pair submitted false and fraudulent Medicaid claims through their employer to the Oklahoma Healthcare Authority. Doc. 1, at 8, 11, and 15. The indictment also sought forfeiture of any property constituting or derived from proceeds of the offenses. Doc. 1, at 20 – 21. Guilty pleas from both soon followed, including his wife's on January 4, 2017, in which she agreed to forfeit all her right, title, and interest in assets subject to forfeiture under federal law. These assets included three bank accounts and the Gray marital residence, all of which she admitted were proceeds or instrumentalities of her crimes. Doc. 45, at 4.

## II. Mr. Gray's Third-Party Petition

### A. Overview of Criminal Forfeiture and Ancillary Proceedings

Section 982 of Title 18 of the United States Code prescribes different forfeiture penalties for different categories of federal crimes. *See* 18 U.S.C. § 982(a). Assuming that an applicable federal statute calls for the forfeiture of a defendant's property, the Court will enter an order to that effect. Fed.R.Crim.P. 32.2(b). It does so only after the defendant has

been found guilty and the Court has determined there is an established nexus between the defendant's crimes and the property. Fed.R.Crim.P. 32.2(b)(1)(A). Importantly, the Court "enter[s] the order without regard to any third party's interest in the property." *Id*. Once the Court has entered the order, any third party claiming a legal interest in the forfeited property can petition the court for a hearing at which the party must establish his legal interest by a preponderance of the evidence. 18 U.S.C. § 853(n)(6). Assuming he carries this burden, the Court will amend its earlier order of forfeiture to preserve the petitioner's interest in the property. And while Federal Rule of Criminal Procedure 32.2(c)(1) mandates that the court must conduct this ancillary proceeding if the third party files a petition,[1] the Rule also clarifies that before the formal hearing, the "court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed.R.Crim.P. 32.2(c)(1)(A). This motion is simply treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *See, e.g., Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004). So as with Rule 12(b), the Court must assume that all "allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Procedural Posture

Defendant Deborah Gray is subject to mandatory forfeiture due to her conviction for healthcare fraud. 18 U.S.C. § 982(a)(7). After this Court found the requisite nexus between her property and her crimes, it entered its Preliminary Order of Forfeiture pursuant

---

[1] So long, that is, as the forfeiture does not consist of a money judgment against the defendant. Fed.R.Crim.P. 32.2(c)(1)(A).

3

to Federal Rule of Criminal Procedure 32.2(b). After the Government, in accordance with 18 U.S.C. § 853(n)(1), provided notice to Mr. Gray as a potentially interested party, Mr. Gray petitioned this Court for a hearing to adjudicate his interests in the Tinker Account and the Gray marital residence. While the Government does not contest his claim to certain monies in the Tinker Account, it does dispute that he has a legal interest in the Gray marital residence. It argues, first, that Mr. Gray lacks a legal interest to raise a claim in this ancillary proceeding, and, second, even if Mr. Gray has a legal interest in the Gray marital residence, it is not sufficient to prevail under § 853(n).

**C. Standing in an Ancillary Proceeding**

Any party petitioning for a hearing under § 853(n) must first demonstrate both constitutional and statutory standing. As for constitutional standing, "a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture." *United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007). At least in regards to this question, the Court is at a loss to see how the seizure of the home in which Mr. Gray lives is not sufficient to confer constitutional standing on him.

Statutory standing is a different matter. § 853(n)(2) requires a third party claimant have a legal interest—as opposed to an equitable interest—to petition the court. *Id*. State law, rather than federal, decides whether this legal interest exists. *Willis Mgmt. (Vermont), Ltd. V. United States*, 652 F.3d 236, 242 (2d Cir. 2011). If state law affords the petitioner no valid interest in the forfeited property, "the inquiry ends and the claim fails for lack of standing." *Timley*, 507 F.3d at 1130 (8th Cir. 2007). In contrast, where the petitioner does

4

hold a legal interest under state law, federal law then determines the consequences of that interest—i.e., whether the interest is sufficient to prevail on the merits under § 853(n)(6). *United States v. BCCI Holdings (Luxembourg), S.A.*, 961 F.Supp. 287, 293 (D.D.C. 1997).

Here, Mr. Gray undoubtedly holds a legal interest in the Gray marital residence. In the eyes of Oklahoma, he and his wife are joint tenants of the Gray marital residence. Because Mr. Gray "has an interest in the property under the law of the jurisdiction that created the property right," the question becomes the consequence of that interest. In other words, the court must look to federal law—here § 853(n)(6)—to determine if the claimant can prevail in the ancillary proceeding.[2]

**D. Prevailing in an Ancillary Proceeding**

Section 853(n)(6) sets out the two ways in which a petitioner can prevail on the merits in an ancillary proceeding. He can either demonstrate priority of ownership under § 853(n)(6)(A) or that he is a bona fide purchaser for value under § 853(n)(6)(B). Mr. Gray argues he qualifies under either category. In his view, his status as a joint tenant and mortgagor, as well as his payments for the house's maintenance and upkeep, elevates his interest above any claim to the property the Government has. He further argues that even if his interest is not superior, he still qualifies as a bona fide purchaser because he had no

---

[2] Notably, the Government's brief seems to confuse the issues of, one, whether Mr. Gray has a legal interest to raise a claim under § 853(n) and, two, whether he can prevail in an ancillary proceeding under the merits. The Eighth Circuit has pointed out that the issues are in fact separate. Section 853(n)(2) requires that a party petitioning the court for an ancillary hearing have a legal interest. *Timley*, 507 F.3d at 1130 n.2. Only after the Court has determined that there is a legal interest does it have the power to hold conduct an ancillary hearing, at which Petitioner can only prevail by satisfying one of the provisions under § 853(n)(6). If it is clear from the face of the petition that the petitioner cannot prevail, no ancillary hearing is necessary. In other words, just because a petitioner has the legal interest required to proceed to an ancillary hearing does not mean he will prevail on the merits.

idea of his wife's crimes when he used some of his own (legal, non-criminal) earnings to purchase the house in March 2013. Each of those questions is better tackled individually.

### i. Priority of Ownership

Section 853(n)(6)(A)'s priority-of-ownership ground works hand in hand with the relation-back doctrine. The Government's interest in property derived from criminal offenses "vests in the United States upon the commission of the [offense]." 21 U.S.C. § 853(c). To that end, a party may prevail under § 853(n)(6)(A) only be establishing by a preponderance of the evidence that he has

> a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property[.]

Importantly, "[t]he requirement that the petitioner's interest be evaluated *at the time of commission of the acts* governs [the Court's] analyses of both when the property became 'vested in the petitioner' and when the petitioner's interest became 'superior to any . . . interest of the defendant.' " *United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015) (citing *United States v. Hooper*, 229 F.3d 818, 821 (9th Cir. 2000)). Consequently, "courts have recognized that a petitioner is unlikely ever to prevail at an ancillary hearing under § 853(n)(6)(A) where the forfeited property consists of 'proceeds' derived from or traceable to a criminal offense." *Watts*, 786 F.3d at 166. This makes sense. By definition, the proceeds of an offense cannot exist before the offense is committed. Because the government's interest vests upon commission of the crime that leads to the proceeds, "any

6

proceeds that ensue from the criminal act belong to the government from the moment they come into existence." *Id*. at 167 (citing *Timley*, 507 F.3d at 1130).

As evident here, § 853(n)(6)(A) "is far better designed to deal with instrumentalities of a crime" rather than proceeds. *Hooper*, 229 F.3d at 822. Unfortunately for Mr. Gray, the Gray marital residence was not an instrumentality owned by him before his wife's healthcare fraud began in October 2011. Instead, they purchased it after her crimes commenced. Of course, this is not to say that Mr. Gray lacks any legal interest in the residence. By all accounts, he shares in a joint tenancy with this wife. But this state-law interest does not allow him to dispense with the federal dictates of § 853(n)(6)(A). "At the time of the commission of the [crime]," nothing shows that an "interest was vested in [Mr. Gray] rather than [Deborah Gray]" or that Mr. Gray's interest "was superior to [Deborah Gray's] interest." § 853(n)(6)(A). In sum, as of October 2011 Mr. Gray had no interest in the Gray marital residence because the couple had not yet purchased it.

This relation-back principle is also why Mr. Gray's arguments that his mortgage payments and payments for maintenance and upkeep are of no consequence. Even if these maintenance payments give him a *legal* interest in the property (they don't)[3] and even if his paying his wife's share of the mortgage gave him some legal interest in his wife's estate as a secured creditor (questionable)[4], Mr. Gray still would be unable to sidestep the

---

[3] Such payments, if they confer any right at all, would be equitable in nature. *See United States v. Knoll*, 785 F.3d 1151, 1156 (7th Cir. 2015) (holding that "any equitable interest created by [petitioner's] caretaking or use of the property is insufficient to establish rights under the statute").

[4] The problem, though, is that he would essentially just be a general creditor to his wife's estate, which courts have generally held does now allow a claimant to prevail under § 853(n)(6)(A). "[A] general creditor can never have an interest in specific forfeited property, no matter what the size of his claim vis-à-vis the value of the defendant's post-forfeiture estate." *BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191

7

relation-back principle in § 843(n)(6)(A). To the extent he gained a legal interest in the home upon making those payments, the Government's interest had vested long before.

### ii. Bona Fide Purchaser for Value

With relief unavailable under § 853(n)(6)(A), that leaves Mr. Gray only one other possible ground for relief: demonstrating he qualifies as a bona fide purchaser for value under § 853(n)(6)(B). To do so, he must satisfy three elements: "(1) the claimant has a legal interest in the forfeited property; (2) the interest was acquired as a bona fide purchaser for value; and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture." *Timley*, 507 F.3d at 1130–1131.

Before addressing those requirements, the Court acknowledges that Mr. Gray's Petition does not allege his status as a bona fide purchaser and that the pleading requirements under § 853(n) obligate him to state which of § 853(n)(6)(B)'s provisions entitle him to relief. He does, however, argue he qualifies as a bona fide purchaser in his Response to the Government's Motion to Dismiss. Doc. 67. Despite that argument's omission from the Petition, the Court is satisfied and will construe his Response as an

---

(D.C. Cir. 1995); *see also, e.g., Ribadeneria*, 105 F.3d at 836 (2d 1997) (general creditors with unidentifiable legal interests in forfeited property lack standing to pursue their claims in ancillary proceedings); *United States v. Campos*, 859 F.2d 1233, 1238 (same); *United States v. Madoff*, No. 09-cr-213, 2012 WL 1142292, *4 (S.D.N.Y. Apr. 3, 2012) (same). This makes sense. If a petitioner must identify a specific legal interest in the piece of forfeited property, he can hardly do that if his claim is simply that he is owed some amount of money. Granted, the Fourth Circuit has recognized an exception where a general creditor may state a claim under § 853(n)(6)(A) where the forfeited property makes up the entirety of a defendant's estate. *See e.g., United States v. Reckmeyer*, 836 F.2d 200, 206 (4th Cir. 1987) ("Because petitioners' [general creditors'] interests necessarily lie within that estate, they meet the threshold qualification for relief by asserting a legal interest in the property subject to forfeiture."). But to the Court's knowledge, only the Fourth Circuit has adopted this position, and it is not one the Court needs to endorse given that, as explained below, Mr. Gray may be a bona fide purchaser under § 853(n)(B)(6).

amendment. Though § 853(n)'s pleading requirements are explicit, that is "primarily because there is a substantial danger of false claims in forfeiture proceedings." *United States v. Burge*, 829 F.Supp.2d 664, 667 (C.D. Ill. 2011). At this point, the Court has no reason to suspect that Mr. Gray's claim to his primary residence—which he continues to live in—is anything but genuine.

Turning back to the provisions of § 853(n)(6)(B), Mr. Gray has clearly stated a claim under that provision. First, he has a legal interest in the property as a joint tenant, as explained above. Second, he acquired his interest for value when he allegedly contributed his own legally derived funds towards the purchase. Though the Government disputes that he did in fact contribute untainted funds towards the purchase, at this stage the Court must take as true his allegation that he did so. As for the Government's argument that he failed to state in his Petition that he contributed untainted funds, when viewing his Petition in the light most favorable to him, the inference is that he did make this allegation. Part of his Petition argues that claimants have the opportunity to show they purchased their residences with untainted funds. Doc. 56, at 5. And he clarifies in his Response that he used his own untainted funds toward purchasing the home. Doc. 67, at 3. So the Court will accept this allegation as true.[5] Third, he pleads that he was without knowledge of his wife's criminal acts when he purchased the home. All of this is sufficient to state a claim as a bona fide purchaser for value under § 853(n)(6)(B).

---

[5] And as for the Government's claim that the totality of the circumstances proves that the house was purchased entirely with criminal proceeds, that is a question which by virtue of statute must be left for the hearing.

In regards to the two cases the government cites for the principle that § 853(n)(6)(B)'s bona fide purchaser provision excludes claimants who receive their interest contemporaneous with the defendant (rather than purchasing the defendant's interest at a later date), neither case persuades. Both cited cases, *United States v. Brewer*, 591 F.Supp.2d 864 (N.D. Tex. 2008), and *United States v. Soreide*, 461 F.3d 1351, 1356 (11th Cir. 2006), relied on the Fourth Circuit's decision in *United States v. Reckmeyer*, 836 F.2d 200 (4th Cir. 1987). *Reckmeyer*, though, is the very case the Government urges us not to adopt, namely because that Court's holding—that general creditors have standing to assert claims under either provision of § 853(n)—arguably supports Mr. Gray's holding here since, with his mortgage payments and maintenance costs, he "gave valuable consideration to the estate without knowledge of the potential forfeitability" of the Gray marital residence. *Id*. at 207. And at any rate, were this Court to find that Mr. Gray could not prevail as a bona fide purchaser, the Court would invite the exact due process concerns that *Reckmeyer* raised. As the Fourth Circuit noted in relying on the legislative history from § 853(n)'s precursor statute, "[c]riminal forfeiture is an *in personam* proceeding. Thus, an order of forfeiture may reach only *property* of the defendant." *Id*. at 207 (citing S.Rep. No. 225, 98th Cong., 2d Sess. 207–208, reprinted in 1984 U.S. Code Cong. & Ad.News 3182, 3390–91) (emphasis added). That "property" of the defendant included only the defendant's specific interest in the property, not the entire piece of the property itself. After all, a "criminal defendant can only be made to forfeit what was his in the first place." *Pacheco v. Serendensky*, 393 F.3d 348, 349 (2d Cir. 2004).

Indeed, both the Second and Eighth Circuits have recognized the due process implications raised by forfeiting property partially owned by an innocent third party. *See id.* at 354 ("The government's acquisition of an entire tract of real property in forfeiture proceedings may thus constitute an unconstitutional taking of a third party's interest or a deprivation of that party's property without due process, in violation of the Fifth Amendment."); *see also United States v. Totaro*, 345 F.3d 989, 999 (8 th Cir. 2003) ("If this court were to deem forfeited the entire estate despite a valid claim of partial ownership by a third party, . . . [i]t would . . . punish the third party, against whom no jury has returned a verdict of guilt, and may therefore raise constitutional questions of a whole different order.") (citation omitted). After all, "the purposes of the forfeiture penalty are to punish, deter and disempower criminals, . . . aims which are not furthered by taking an innocent owner's share." *Pacheco*, 393 F.3d at 355 (internal cites omitted).[6]

### III. Sale of Interlocutory Property

As a final matter, the Court addresses the Government's Motion for the Interlocutory Sale of Property. Doc. 62. The Government wants the Court to order the sale of property before the Court holds the ancillary hearing. To be sure, Federal Rule of Criminal Procedure 32.2(b)(7) approves this type of sale. But the Rule also clarifies that the Court must act "in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure." That Rule, in turn, permits—but does not mandate—the Government to

---

[6] Nor is the Court satisfied with the Government's assurances that the procedures set out in § 853 necessarily afford Mr. Gray due process. Procedural due process, perhaps, since that promises only a "guarantee of fair procedure." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). But substantive due process? The Court still has concerns.

sell the property under certain conditons. See Fed.R.Civ.P. Supp.R. G(7). Those conditions include when

> **(A)** the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;
> **(B)** the expense of keeping the property is excessive or is disproportionate to its fair market value;
> **(C)** the property is subject to a mortgage or to taxes on which the owner is in default; or
> **(D)** the court finds other good cause.
>
> Fed.R.Civ.P. Supp. G(7)(b)(i)(A)-(D).

The Government insists that the Gray marital residence is decreasing in value because Mr. Gray has missed two mortgage payments, and an interlocutory sale is thus necessary to preserve the house's value. The Court is unpersuaded. The house's value has rested at $744,087.00 since 2014. Doc. 68, Ex. 1. As for the Government's claim that any later sale by Mr. Gray will garner significantly less value than it would if sold by the appropriate United States agency, that seems belied by the house's current listing price of $780,000. Doc. 68, Ex. 2. These figures, paired with Advisory Committee Notes to Supplemental Rule G(7), which, one, demand that the Court "carefully weigh the competing interests in each case" and, two, instruct that "[c]are should be taken before ordering sale to avoid diminished value," suggests this is not the type of case where interlocutory sale of the property is warranted. Further, the Government's request that this Court order Mr. Gray to make mortgage payments seems impractical given Mr. Gray's apparent inability to pay his mortgage due to his wife's loss of employment.

**Conclusion**

Mr. Gray's Motion for a Hearing [Doc. 56] is GRANTED. The Government's Motion to Dismiss the Petition [Doc. 61] is DENIED. The Government's Motion for Order for Interlocutory Sale of Property [Doc. 62] is DENIED.

The Court will set a status conference for Monday, June 19, 2017, at 9 a.m. At the status conference the Court will set a discovery schedule and a date for the ancillary hearing. Following discovery, the parties will be permitted to move for summary judgment before the hearing.

IT IS SO ORDERED this 12th day of June 2017.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE